RENDERED: MAY 19, 2011
TO BE PUBLISHED



# Supreme Court of Kentucky

## 2008-SC-000825-MR

DAVID LEE SANDERS                                    APPELLANT

ON APPEAL FROM MADISON CIRCUIT COURT
V.         HONORABLE GARY D. PAYNE, JUDGE
NO. 87-CR-00018

COMMONWEALTH OF KENTUCKY                             APPELLEE

## OPINION OF THE COURT BY JUSTICE VENTERS

## AFFIRMING

Appellant, David Lee Sanders, appeals from an order of the Madison Circuit Court denying his petition for post-conviction relief pursuant to CR 60.02. In this appeal, Appellant raises the following principal arguments: (1) that Special Judge Gary D. Payne, a Senior Status Judge, was unconstitutionally appointed to preside over his case, and, alternatively, he was not given proper notice of the appointment; (2) that the trial court erred in denying his claim of ineffective assistance of direct appeal counsel; (3) that the trial court erred in denying his claim of ineffective assistance of RCr 11.42

counsel; and (4) that reasons of an extraordinary nature justify post-conviction relief under CR 60.02. For the reasons explained below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 28, 1987, Appellant killed James Brandenburg, the proprietor, and Wayne Hatch, a customer, of the Boone Variety Store in Madison County. Each victim was shot once in the back of the head. Appellant admitted to the shootings, and overwhelming circumstantial evidence linked him to the killings. Following a jury trial, Appellant was convicted of killing and robbing the two victims. Having admitted to the shootings, at trial, insanity was Appellant's sole defense. Appellant was sentenced to death for the two murders.

Upon direct appeal to this Court, during which Appellant was represented by the Department of Public Advocacy (DPA), we affirmed. *Sanders v. Commonwealth*, 801 S.W.2d 665 (Ky. 1990). In our decision we noted that there existed "overwhelming evidence, including [Appellant's] own trial testimony, of his guilt." *Id.* at 668. Concurring in result only, Justice Leibson noted that trial errors had occurred, but "because this was not a close case[,] [t]hese errors were harmless beyond a reasonable doubt when considered in context and in light of the overwhelming evidence of premeditated, multiple murder." *Id.* at 684. Appellant filed a petition for writ of certiorari in the United States Supreme Court which was denied in *Sanders v. Kentucky*, 502 U.S. 831 (1991).

2

In 1993, again represented by the DPA, including attorneys who had participated in his direct appeal, Appellant filed a RCr 11.42 motion in the trial court seeking post-conviction relief. On January 28, 1999, the trial court entered an order denying the motion without a hearing. On June 13, 2002, we rendered an opinion affirming the trial court's denial of Appellant's RCr 11.42 motion. *Sanders v. Commonwealth*, 89 S.W.3d 380 (Ky. 2002) *overruled in part by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009).

Following the finality of the denial of his RCr 11.42 motion (in December 2002), on December 18, 2003, Appellant filed a petition for a writ of habeas corpus in federal district court. However, that case was placed in abeyance upon the supposition that Appellant had unexhausted state remedies - those now under review in the present CR 60.02 proceedings.

Appellant filed his present CR 60.02 motion (pursuant to subsections (d), (e) and (f)) on January 5, 2005. The motion alleged multiple grounds for relief, which are itemized in Section IV, *infra*.

After the CR 60.02 motion was filed, because of a vacancy on the Madison Circuit Court, Senior Status Judge Gary D. Payne was appointed by Chief Senior Status Judge Joseph Lambert to preside over the case. As further discussed below, Appellant contends that this appointment was an unconstitutional appointment, and accordingly renders Judge Payne's determinations in the case invalid. Appellant also alleges that he did not learn of Judge Payne's assignment to preside over the proceeding until the judge had

issued his decision in the case, thereby depriving Appellant of an opportunity to challenge the appointment pursuant to KRS 26A.020(1).

On October 10, 2008, the trial court entered an order denying Appellant's motion for relief on the basis that: (1) each claim was, or could have been, raised either on direct appeal or in his prior RCr 11.42 proceeding; (2) the CR 60.02 motion amounted to an impermissible successive RCr 11.42 action; (3) the motion was not filed within a reasonable time; and (4) the motion failed to state a claim that constituted a reason of an extraordinary nature justifying relief under CR 60.02(f). This appeal followed.

## II. APPOINTMENT OF SPECIAL JUDGE

Appellant filed the present CR 60.02 motion in Madison Circuit Court on January 5, 2005. During the pendency of the case a vacancy occurred on the Madison Circuit Court bench. On September 29, 2008, Chief Senior Status Judge Lambert appointed Senior Status Judge Payne to preside as a special judge over all matters pending before Madison Circuit Court. Judge Payne eventually issued the October 10, 2008 order denying Appellant's motion for post-conviction relief. Appellant alleges that Judge Lambert's appointment of Judge Payne was in violation of Kentucky Constitution § 110(5)(b) because only the Chief Justice of the Kentucky Supreme Court has the authority to appoint a special judge to preside over a particular case under that constitutional provision. ("[The Chief Justice] shall assign temporarily any justice or judge of the Commonwealth, active or retired, to sit in any court other than the

4

Supreme Court when he deems such assignment necessary for the prompt disposition of causes.").

Appellant further alleges that he did not have notice of Judge Payne's appointment to preside over his case until he received the order denying relief, and thus was denied his opportunity to challenge the appointment as provided by KRS 26A.020(1).

*A. Constitutionality of Appointment*

We first consider the constitutionality of the appointment by Chief Senior Status Judge Lambert of Judge Payne to preside over the Madison Circuit Court docket, including the present case. We begin by taking judicial notice that on June 27, 2008, Kentucky Supreme Court Chief Justice John Minton entered an order stating as follows:

> Pursuant to Section 110(5)(b) of the Constitution of Kentucky, and in accord with the orders adopting the Guidelines for the Senior Status Program for Special Judges and the Regional Administration Program Charter, the Honorable Joseph E. Lambert, retired Chief Justice of Kentucky and currently a Senior Status Judge, is hereby appointed as Chief Senior Status Judge for the Commonwealth of Kentucky. The duties and responsibilities of the Chief Senior Status Judge shall include assisting the Chief Justice with the administration and oversight of the Senior Status Program. *The Chief Senior Status Judge shall be the designee of the Chief Justice with authority to assign Senior Status Judges or Retired Judges to sit in any court of the Commonwealth* except the Supreme Court, and shall be subject to the supervision and complete control of the Chief Justice.

This Order shall be effective upon entry, and until further Order.

(emphasis added).

By its plain terms, the Chief Justice's delegation of authority to Chief Senior Status Judge Lambert was broad, and included the "authority to assign

Senior Status Judges or Retired Judges to sit in any court of the Commonwealth" except the Supreme Court. Accordingly, Judge Lambert's appointment of Judge Payne to preside over this case fell within the authority granted to him in the Chief Justice's commission appointing him to the office.

The question is then narrowed to whether the Chief Justice had the authority to delegate his power to appoint Special Judges to sit and preside over cases in the lower courts of the Commonwealth. Kentucky Constitution Section 110(5)(b) gives the Chief Justice the power to delegate this authority. This constitutional provision provides, in relevant part, as follows:

> (b) The Chief Justice of the Commonwealth shall be the executive head of the Court of Justice and *he shall appoint such administrative assistants as he deems necessary.* He shall assign temporarily any justice or judge of the Commonwealth, active or retired, to sit in any court other than the Supreme Court when he deems such assignment necessary for the prompt disposition of causes.

*Id.* (emphasis added); *see also* KRS 26A.020(1).

Thus, while the section vests the Chief Justice with the constitutional authority to make appointments of special judges to sit in the lower courts, it also grants him the authority to "*appoint such administrative assistants as he deems necessary*" to carry out the functions of his office. The Chief Justice's appointment of a Chief Senior Status Judge as an "administrative assistant" to assist in the administration of the Senior Status Judge Program, including the appointments of Senior Judges to particular courts or cases, fits comfortably within this constitutional provision.

6

For this reason, we hold that the Chief Justice properly delegated his appointive authority as it relates to the Senior Status Judge Program to Judge Lambert, and Judge Lambert, in turn, properly exercised his authority in appointing Judge Payne to preside over the Madison Circuit Court docket, including the present case.

B. *Notice of Appointment*

In connection with this argument, Appellant also argues that "because he had no knowledge of Judge Payne's appointment until he received the order denying his [CR 60.02] motion, he did not waive his right to challenge the appointment of Judge Payne as special judge by not objecting earlier." Significantly, Appellant does not allege that Judge Payne did not provide him a fair and impartial review of his CR 60.02 motion. His argument, rather, is limited to his claim that Judge Payne was unconstitutionally appointed to preside over his case.

In order to implement the procedures contained in KRS 26A.020(1), reason would dictate that the parties should be notified of the appointment and given the opportunity to object. KRS 26A.020(1) provides as follows:

> When, from any cause, a judge of any Circuit or District Court fails to attend, or being in attendance cannot properly preside in an action pending in the court, or if a vacancy occurs or exists in the office of circuit or district judge, the circuit clerk shall at once certify the facts to the Chief Justice who shall immediately designate a regular or retired justice or judge of the Court of Justice as special judge. *If either party files with the circuit clerk his affidavit that the judge will not afford him a fair and impartial trial, or will not impartially decide an application for a change of venue, the circuit clerk shall at once certify the facts to the Chief Justice who shall immediately review the facts and determine whether to designate a regular or retired justice or judge of the Court*

7

*of Justice as special judge.* Any special judge so selected shall have all the powers and responsibilities of a regular judge of the court.

(emphasis added).

Nevertheless, "[s]ince at least 1860 it has been the rule that objection to one acting as special judge cannot be made for the first time on appeal." *Jacobs v. Commonwealth,* 947 S.W.2d 416, 418 (Ky. App. 1997) (citing *Vandever v. Vandever,* 60 Ky. 137, 138 (3 Metc. 137) (1860)); *see also Salyer v. Napier,* 21 Ky. L. Rptr. 172, 51 S.W. 10, 11 (1899) ("Appellants participated in the trial of the action, filing many pleadings and introducing much proof, and this court will not now for the first time entertain the objection as to the authority of the special judge to render judgment."); *Kentucky Utilities Co. v. South East Coal Co.,* 836 S.W.2d 407, 409 (Ky. 1992) ("Only after South East Coal Company received an unfavorable opinion did it voice any complaint [regarding the appointment of Special Judge Chenoweth]. We need not provide extensive authority for the proposition that a party must timely object or be deemed to have waived any such objection.").

While it is true that the record does not disclose that Appellant received any notice of Judge Payne's appointment as Special Judge until the issuance of the October 10, 2008 order denying his CR 60.02 motion, obviously he at that point did have notice and yet failed to object to the appointment as he was allowed under KRS 26A.020(1) and CR 59. Moreover, in connection with Appellant's notice of appeal, Judge Payne signed the October 30, 2008 order permitting him to proceed in forma pauperis, again without objection. As such,

8

we have doubts about whether Appellant properly preserved the notice issue by objecting to the appointment in the trial court.

In any event, Appellant makes no argument that Judge Payne did not provide him a fair and impartial review. His grounds for raising the notice issue are solely directed toward his argument that Judge Payne's appointment was unconstitutional. As reflected above, we have fully considered the constitutional issue as raised by Appellant, and thus he has obtained the relief requested under his lack of notice argument — review of the constitutionality of the appointment. We thus will not reverse the judgment based merely upon lack of notice prior to entry of the October 10, 2008 order.

### III. INEFFECTIVE ASSISTANCE OF DIRECT APPEAL COUNSEL

Next, Appellant contends that the trial court erred by denying his claim for relief upon the grounds that he received ineffective assistance of direct appeal counsel.

Appellant claims he received ineffective assistance of direct appellate counsel because his counsel failed to raise the following issues on direct appeal: (1) that Appellant's trial was conducted in a prejudicial atmosphere which violated due process; (2) that Appellant's constitutional rights were violated when the trial court failed to remove two prospective jurors for bias during voir dire; (3) that Appellant was incompetent to stand trial; (4) that the trial court violated due process by failing to hold a hearing to determine whether Appellant was competent to stand trial; (5) that the introduction of Appellant's statements made while being evaluated at the Kentucky

9

Correctional Psychiatric Center violated his constitutional rights; (6) that Appellant was deprived of his constitutional right to jury sentencing due to the prosecutor's improper penalty phase statements; (7) that Appellant was incompetent at the time of his sentencing; and (8) that the trial court violated due process by failing to hold a competency hearing for Appellant at the time of his sentencing.

In *Hollon v. Commonwealth*, ____ S.W.3d____, 2010 WL 4679534 (Ky. 2010), we recently revisited the issue of ineffective assistance of direct appeal counsel. In *Hollon* we overruled *Hicks v. Commonwealth*, 825 S.W.2d 280 (Ky. 1992), and similar cases which held that a claim of ineffective assistance of direct appeal counsel is not recognized in Kentucky, and, joining our forty-nine sister states, recognized that "the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and through it the Sixth Amendment, entitle criminal defendants to the effective assistance of counsel not only at trial, but during a first appeal as of right." *Hollon*, at *2 (citing *Evitts v. Lucey*, 469 U.S. 387 (1985); *Mason v. Hanks*, 97 F.3d 887 (7th Cir. 1996)); *see also Smith v. Robbins*, 528 U.S. 259 (2000). Procedurally, we held that ineffective assistance of direct appeal counsel" may henceforth be pursued by motion in the trial court of conviction under RCr 11.42." *Id.* at *7.

Thus, pursuant to *Hollon*, ineffective assistance of direct appeal counsel is now a cognizable claim in Kentucky, and may be brought within a timely filed RCr 11.42 motion. Crucial to the case before us, however, *Hollon* further held as follows:

10

> Our ruling is to have prospective effect only. It applies to this case, to cases pending on appeal in which the issue has been raised and preserved, and to cases currently in or hereafter brought in the trial court in which the issue is raised. Prospective application is appropriate because, although our courts have not until now provided a forum for [ineffective assistance of appellate counsel] claims based on an allegedly inadequate appellate brief, the federal courts have provided a forum through habeas review. *See Boykin v. Webb,* [541 F.3d 638 (6th Cir. 2008)]. Kentucky defendants have not, therefore, been denied an opportunity to vindicate their right to effective appellate counsel, and there is thus no need for our decision today to reach back and operate retroactively.

*Id.* at *14-15.

Because Appellant's RCr 11.42 proceeding, the sanctioned method for bringing an ineffective assistance of direct appeal counsel claim, has long since been decided and become final, he is barred by the retroactivity provisions of *Hollon* from prosecuting the claim in the present CR 60.02 proceeding. As such, the trial court properly denied Appellant's claims based upon ineffective assistance of direct appeal counsel. As noted in *Hollon,* however, Appellant may not retroactively assert his claim of ineffective assistance of appellate counsel in state court. Since he has therefore now exhausted his remedies for that claim in state court, we presume consideration of the claim remains available through federal habeas review.

## IV. INEFFECTIVE ASSISTANCE OF RCr 11.42 COUNSEL

Next, Appellant contends that he is entitled to relief upon the basis that he received ineffective assistance of counsel in his RCr 11.42 proceedings. He argues that his RCr 11.42 counsel was ineffective: (1) for failing to argue that the admission of evidence of the Lincoln County assault was improper because

11

that charge was subsequently dismissed and (2) for failing to argue that trial counsel was ineffective for failing to have the Lincoln County victim removed from the courtroom during his trial. He also argues that he received ineffective assistance of RCr 11.42 counsel because "he essentially had no attorney on his behalf for most of the [six years] his 11.42 motion was pending."

We directly addressed the issue of ineffective assistance of RCr 11.42 counsel in *Hollon*, wherein we stated "[f]or further clarity, we additionally emphasize that [ineffective assistance of appellate counsel] claims are limited to counsel's performance on direct appeal; there is no counterpart for counsel's performance on RCr 11.42 motions or other requests for postconviction relief." *Id.* at *4.

With the ink barely dry on the *Hollon* decision, we decline in this case to revisit the issue of ineffective assistance of RCr 11.42 counsel, and thus affirm the trial court upon this argument.

## V. APPELLANT IS NOT ENTITLED TO CR 60.02 RELIEF

Upon the merits, Appellant is not entitled to CR 60.02 relief on the remaining grounds raised in his motion. Appellant filed his present CR 60.02 motion (pursuant to CR 60.02(d), (e), and (f)) on January 5, 2005. The motion alleged the following grounds for relief: (1) trial counsel failed to move for a change of venue; (2) the trial court failed to remove two biased jurors (Juror Meinzer and Juror Warren) for cause from the venire panel; (3) the trial court's ex parte communications with the prosecutor about Juror Meinzer; (4) Appellant's constitutional right to be present was violated when the trial court

12

questioned Juror Warren in chambers outside the presence of Appellant; (5) the trial court violated Appellant's constitutional rights by refusing to permit adequate voir dire with regard to the death penalty; (6) the trial court's exclusion of "death-scrupled" jurors from Appellant's jury violated his constitutional rights; (7) the trial court's failure to comply with the established procedures for selecting a jury violated due process, and trial counsel's failure to object thereto constituted ineffective assistance of counsel; (8) the Commonwealth's defining of reasonable doubt during voir dire violated Appellant's constitutional rights; (9) the trial court erred by forcing Appellant to use peremptory strikes to excuse biased jurors who should have been removed for cause; (10) trial counsel rendered ineffective assistance by failing to adequately question jurors during voir dire and failing to remove biased jurors; (11) the trial court erred by admitting evidence of another crime committed by Appellant (his assault in Lincoln County); (12) trial counsel rendered ineffective assistance by failing to object to hearsay and opinion evidence from the state psychiatrist; (13) Detective Benton's testimony that Appellant was not insane was improperly admitted; (14) evidence which only served to elicit sympathy for the victims was improperly admitted; (15) the trial court erred in not permitting Appellant to testify why he had not sought bail; (16) the presence of the victim of the Lincoln County assault in the courtroom was unduly prejudicial; (17) the prosecutor's repeated denigration of his insanity defense and references to prior bad acts and accusations of lying was improper; (18) for various reasons the guilt phase jury instructions were erroneous; (19) the Commonwealth made

13

improper comments during opening and closing statements; (20) the Commonwealth's statement to the jury that its sentencing decision was only a recommendation was improper; (21) the trial court's failure to instruct on all mitigating circumstances was error; (22) trial counsel was ineffective by failing to object to the erroneous penalty phase instructions; (23) the trial court erred by failing to consider non-statutory mitigating evidence at final sentencing; (24) the trial court's consideration of the personal circumstances of the victims at sentencing final sentencing was erroneous; (25) our death penalty statute is unconstitutional; (26) our proportionality review is flawed; (27) trial counsel for numerous reasons (not repeated individually herein) rendered ineffective assistance of counsel; (28) the Commonwealth improperly failed to disclose exculpatory evidence; (29) the Commonwealth improperly failed to correct Dr. Walker's false statements to the jury; (30) the deprivation of an evidentiary hearing on Appellant's post-conviction claims deprived him of due process; (31) the unavailability of discovery during post-conviction was a violation of due process; (32) Appellant was denied due process when his claims of ineffective assistance of counsel were declared to have been decided on direct appeal, though not raised on direct appeal; (33) Appellant's constitutional rights were violated when this Court retroactively applied new procedural rules to his post-conviction claims; (34) Appellant was denied effective assistance of appellate counsel; (35) lethal injection is unconstitutional; and (36) cumulative prejudice (setting forth twenty-six additional itemized claims).

14

As stated in his motion, Appellant brought his claim for relief pursuant to CR 60.02(d), (e), and (f). CR 60.02 provides, in relevant part, as follows:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: . . . (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time . . . .[1]

While Appellant states that he is bringing his motion under grounds (d), (e), and (f), an examination of his claims readily discloses that these grounds - (d) "fraud affecting the proceedings, other than perjury or falsified evidence" and (e) "the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application" - are manifestly not implicated by his claims. Accordingly, Appellant is not entitled to relief under these grounds. Therefore, if Appellant is entitled to relief at all, it must be under the catchall provision contained in CR 60.02(f), that is, "grounds for relief for any other reason of an extraordinary nature justifying relief."

---

[1] Grounds under CR 60.02 (a) (b), and (c) ((a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence) are not alleged and, in any event, must be brought within one year of the judgment, and thus are not available because of the limitations period.

15

We begin by restating a few basic principles relating to CR 60.02 proceedings. First, CR 60.02 allows appeals based upon claims of error that "were unknown and could not have been known to the moving party by exercise of reasonable diligence and in time to have been otherwise presented to the court." *Young v. Edward Technology Group, Inc.*, 918 S.W.2d 229, 231 (Ky. App. 1995). The rule represents the codification of the common law writ of coram nobis, which allows a judgment to be corrected or vacated based "upon facts or grounds, not appearing on the face of the record and not available by appeal or otherwise, which were not discovered until after rendition of judgment without fault of the parties seeking relief." *Davis v. Home Indemnity Co.*, 659 S.W.2d 185, 188 (Ky. 1983) (citing *Harris v. Commonwealth*, 296 S.W.2d 700 (Ky. 1956)).

"The structure provided in Kentucky for attacking the final judgment of a trial court in a criminal case is not haphazard and overlapping, but is organized and complete. That structure is set out in the rules related to direct appeals, in RCr 11.42, and *thereafter* in CR 60.02." *Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983). The rule is not intended as merely an additional opportunity to raise claims which could and should have been raised in prior proceedings, but, rather, "is for relief that is not available by direct appeal and not available under RCr 11.42." *Id.* "In order to be eligible for CR 60.02 relief, the movant must demonstrate why he is entitled to this *special, extraordinary* relief." *Barnett v. Commonwealth*, 979 S.W.2d 98, 101 (Ky. 1998) (emphasis added).

16

A review of the grounds for relief listed above demonstrates that each of the claims, with the exercise of reasonable diligence, could have been brought either in Appellant's direct appeal or in his RCr 11.42 proceeding. As such, they do not qualify to be brought in a CR 60.02 proceeding. Moreover, the claims are of the usual procedural, evidentiary, and ineffective assistance of counsel variety, and do not implicate the extraordinary sort of claim contemplated under CR 60.02(f). In summary, Appellant has failed to demonstrate that there are extraordinary circumstances which would entitle him to relief under CR 60.02(f).

Appellant contends that the trial court erred by failing to discuss each and every claim individually. However, in cases where issues share a common basis for denial, trial courts are not prohibited from treating those issues collectively (much as we have done in evaluating Appellant's CR 60.02 claims).

Appellant also alleges that the trial court erred by treating his CR 60.02 motion as an impermissible successive RCr 11.42 motion. An RCr 11.42 motion "shall state all grounds for holding the sentence invalid of which the movant has knowledge. Final disposition of the motion shall conclude all issues that could reasonably have been presented in the same proceeding." RCr 11.42(3). This provision has been held to bar successive RCr 11.42 motions. *See Fraser v. Commonwealth*, 59 S.W.3d 448, 454 (Ky. 2001) (citing *Butler v. Commonwealth*, 473 S.W.2d 108, 109 (Ky. 1971)). An examination of the claims as listed above discloses that they are of the type ordinarily raised in an RCr 11.42 petition. Thus, in practical effect, Appellant's CR 60.02 motion

17

was indeed, as found by the trial court, an impermissible successive RCr 11.42 motion.

Finally, Appellant alleges that the trial court erred by finding that his CR 60.02 was untimely. Because of our disposition of Appellant's CR 60.02 claims, however, we need not address this argument.

## V. CONCLUSION

For the foregoing reasons, the judgment of the Madison Circuit Court is affirmed.

Abramson, Cunningham, Noble, Schroder, and Scott, JJ., concur. Minton, C.J., not sitting.

COUNSEL FOR APPELLANT:

David Michael Barron
Department of Public Advocacy
Assistant Public Advocate
Capital Post Conviction Unit
100 Fair Oaks Lane, Suite 301
Frankfort, Kentucky 40601


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

William Robert Long, Jr.
Assistant Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204

Heather Michelle Fryman
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Kentucky 40601